FILED
7/20/2020
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>SALLYEA ONEAL MCCLINTON,<br><br>Appellant. | No. 79918-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — McClinton appeals his conviction for failure to register as a sex offender. He argues that there is insufficient evidence that he failed to report weekly after registering as homeless. Specifically, he argues that RCW 9A.44.130(6)(b) required the State to prove that the King County Sheriff's Office specified a particular day of the week for him to report. McClinton further contends that failure to register is an alternative means crime. As a result, he asserts that even if the State proved that he registered a fake address, its failure to prove that he did not report weekly violated his right to jury unanimity. Last, he argues that the trial court improperly ordered him to pay supervision fees as a condition of community custody. We affirm McClinton's conviction, but remand to the trial court to strike the supervision fees from his judgment and sentence.

## FACTS

In August 1997, Sallyea McClinton was convicted of first degree rape with a deadly weapon, first degree attempted rape, and first degree burglary. His two

rape convictions required him to register as a sex offender under RCW 9A.44.130. In March 2019, the State charged him with failure to register as a sex offender. It alleged that between March 20, 2018 and June 19, 2018, McClinton knowingly failed to comply with the requirements of RCW 9A.44.130. Specifically, it alleged that he failed to report weekly after registering as homeless on April 2, 2018. It further alleged that on April 30, 2018, he registered an address that did not exist.

At trial, the State presented testimony from Tina Keller, a project program manager for the King County Sheriff's Office in the Registered Sex Offender Unit. Keller testified that she located a registration form in McClinton's file dated April 2, 2018. She stated that he registered as homeless on the form.

Keller explained that on the back of the registration form, there is a section for individuals who lack a fixed address to fill out whether or not they want to provide a block or cross street, or a landmark or shelter address. She further explained that there is a small area underneath this section explaining that if they register as transient, they are required to report once a week at the King County Sheriff's Office. The form asks individuals to initial this area to indicate that they understand the weekly reporting requirement. Keller testified that the form in McClinton's file includes the initials "S.O.M." next to this area. She also stated that the name on the signature line at the bottom of the form reads "Sallyea McClinton."

McClinton's signature also appears on the bottom of a "Sex and Kidnapping Offender Registration Notification" form dated April 2, 2018. He signed below a sentence indicating that he received a copy of the registration notification informing him of his registration requirements. The second page of the registration

2

notification states that a person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. It specifies that in King County, this weekly report may be on any day of the week a person chooses. Keller testified that after checking McClinton's file in its entirety, she was unable to locate any report forms between April 2, 2018 and April 30, 2018. She stated that if there were any report forms, they would have been in his file.

Keller testified next that she located a second registration form in McClinton's file dated April 30, 2018. She stated that on this form, McClinton submitted a change of address. He listed his new address as 318 South Washington Street in Seattle. Keller verified the address when McClinton gave her the form. She testified that the name on the form's signature line reads "Sallyea McClinton." Keller was unable to locate any other forms in his file, including report and change of address forms, between April 30, 2018 and June 19, 2018.

The State also presented testimony from Michael Luchau, a detective for the King County Sheriff's Office. Luchau testified that after McClinton submitted his April 30 change of address, he tried to verify that the address existed. Luchau walked to the intersection of the block where McClinton reported he was living, but was unable to find the address. He found a 300, 306, 310, and 312 South Washington Street, but could not find a 318 South Washington Street. Seattle's Union Gospel Mission has a similar address, 318 Second Avenue Extension South. It offers several long term programs for people dealing with addiction and homelessness. David Mace, an attorney with Union Gospel Mission, testified that

3

once an individual enters a long term program, their identity is kept in a database. Mace was unable to find anybody named "Sallyea McClinton" in Union Gospel Mission's database between 2010 and August 2018.

At the close of evidence, McClinton asked the trial court to instruct the jury that it must be unanimous as to the act relied upon to convict. He argued that the State had alleged two independent ways during two separate time periods in which he could have violated the failure to register statute. First, the State had alleged that he failed to report weekly between April 9, 2018 and April 30, 2018. Second, the State had alleged that he registered a false fixed residence between April 30, 2018 and the end of the charging period. The trial court denied his request for a unanimity instruction.

A jury found McClinton guilty as charged. The trial court sentenced him to 6 months of confinement and 12 months of community custody. As a condition of community custody, it ordered him to "[p]ay supervision fees as determined by the Department of Corrections."

McClinton appeals.

## DISCUSSION

McClinton makes three main arguments. First, he argues that there is insufficient evidence that he failed to report weekly after registering as homeless. Second, he argues that failure to register is an alternative means crime. Thus, he asserts that even if the State proved that he registered a fake address, its failure to prove that he did not report weekly violated his right to jury unanimity. Last, he

argues that the trial court improperly ordered him to pay supervision fees as a condition of community custody.

I. Sufficiency of Evidence

McClinton argues first that there is insufficient evidence that he failed to report weekly after registering as homeless. Specifically, he contends that RCW 9A.44.130(6)(b) required the State to prove that the King County Sheriff's Office specified a particular day of the week for him to report, and that it failed to do so. The State does not dispute that the King County Sheriff's Office failed to specify one particular day of the week for McClinton to report. Instead, it counters that registration on a particular date is not an element of the crime.

The sufficiency of the evidence is a question of constitutional law that we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficient evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from that evidence. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

RCW 9A.44.130(6)(b) outlines the registration requirements for sex offenders who lack a fixed residence. It provides in part,

> A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. <u>The weekly report shall be on a day specified by the county sheriff's office, and shall occur during normal business hours.</u> The person must keep an

5

accurate accounting of where he or she stays during the week and provide it to the county sheriff upon request.

Id. (emphasis added). The trial court instructed the jury that "[a] person commits the crime of failure to register as a sex offender when that person, having been convicted of a sex offense for which the person is required to register as a sex offender, knowingly fails to comply with any of the requirements of sex offender registration." Among these requirements, the court listed "the requirement that the defendant, lacking a fixed residence, report weekly on a day specified by the county sheriff's office and during normal business hours, in person, to the sheriff of the county where the defendant is registered." (Emphasis added.)

At issue here is whether RCW 9A.44.130(6)(b) requires a county sheriff's office to specify one particular day of the week for a defendant to report, instead of directing a defendant to report once a week on a day of their choosing. We review questions of statutory interpretation de novo. State v. Budik, 173 Wn.2d 727, 733, 272 P.3d 816 (2012). Our objective is to determine and give effect to the legislature's intent by ascertaining the plain meaning of the statute. Id. In doing so, we look to the text of the provision, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. Id. If the statute remains susceptible to more than one reasonable interpretation, it is ambiguous, and we look to the legislative history of the statute and the circumstances surrounding enactment to determine legislative intent. Id. "Common sense informs our analysis, as we avoid absurd results in statutory interpretation." State v. Alvarado, 164 Wn.2d 556, 562, 192 P.3d 345 (2008).

6

Moreover, we strictly construe statutes establishing procedures leading to a loss of liberty. State v. Dollarhyde, 9 Wn. App. 2d 351, 355, 444 P.3d 619 (2019).

McClinton asserts that the phrase "day specified" is not defined in RCW 9A.44.130(6)(b) and therefore "its usual or ordinary meaning applies." He states that "[t]he dictionary defines 'day' as 'the time of light or interval between one night and the next.'" (Citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 578 (1993)). Next, he states that "'[s]pecified' is the past tense or past participle of 'specify,' which means: 'to mention or name in a specific or explicit manner.'" (Citing WEBSTER'S at 2187). Applying these definitions, he reasons that a specified time of light or interval between one night and the next would be "'Monday,' for instance, as it is 'the second day of the week' or 'the day following Sunday.'" (Citing WEBSTER'S at 1457). Thus, he concludes that under RCW 9A.44.130(6)(b), "a person who lacks a fixed residence must report weekly on the day of the week or date specified by the sheriff's office, i.e. Monday, Tuesday, Wednesday, Thursday, Friday." He notes that the King County Sheriff's Office "never specified any particular day" for him to report.

McClinton also likens this case to Dollarhyde. There, the trial court found Dollarhyde guilty of failure to register as a sex offender after he failed to list all of the locations where he stayed during the week on the back of two weekly report forms. 9 Wn. App. 2d at 354. This court reversed his conviction on appeal. Id. at 356. First, it emphasized the language in RCW 9A.44.130(6)(b), which provides that a person who lacks a fixed residence must keep an accurate accounting of where he or she stays during the week and provide it to the county sheriff upon

7

request. Id. at 355. Construing the statute strictly, it found that RCW 9A.44.130(6)(b) "requires the sheriff's office to make a clear and specific request each week for that accounting." Id. The two weekly report forms at issue did not ask Dollarhyde to provide an accounting of where he stayed that week. Id. As a result, this court held that the evidence was insufficient for a trier of fact to find beyond a reasonable doubt that the sheriff's office requested that Dollarhyde provide an accounting of where he stayed for either of those weeks. Id. at 356.

McClinton argues that like Dollarhyde, the State failed to show that the King County Sheriff's Office specified a day for him to make his weekly report after April 2, 2018. It is true that the King County Sheriff's Office did not assign McClinton one particular day of the week to report. Yet, the registration notification he signed on April 2 informed him that his weekly report to the sheriff's office could be completed on any day he chose. It clarified that as long he reported one time each week, he would remain in compliance with the law.

The plain language of RCW 9A.44.130(6)(b) requires that an offender who lacks a fixed residence report weekly to the county sheriff. The sheriff has the discretion as to when during the week the offender must report, but has a duty to notify the offender when to report. It does not violate that duty or the delegated discretion to designate and give notice that more than one day a week is available for reporting. The literal requirement of "a day" is satisfied by designating any day of the week. It is more forgiving to the offender than a limitation to a single calendar day. It is more flexible for the sheriff's office as well. The legislature's purpose in enacting RCW 9A.44.130 was regulatory, not punitive. State v. Ward, 123 Wn.2d

8

488, 510, 869 P.2d 1062 (1994). Accordingly, we will not interpret the statute in such a way that would decrease compliance and increase its punitive effect. RCW 9A.44.130 does not require a county sheriff's office to specify only one particular day of the week for offenders to complete their weekly reports.

The King County Sheriff's Office met its burden to specify a day for McClinton to weekly report when it communicated to him that he could report weekly on any day of his choosing. It clarified that as long as he reported one time each week, he would remain in compliance with the law. Despite receiving this information on April 2, 2018, Keller testified that she could not locate any weekly report forms in McClinton's file between April 2, 2018 and April 30, 2018. She stated that if there were any forms, they would have been in his file. Viewing this evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that McClinton failed to report weekly as required. Thus, the evidence is sufficient to support his conviction.

II.    Unanimity Instruction

McClinton argues next that failure to register as a sex offender is an alternative means crime under the circumstances of this case. He explains that he was charged with two "discrete acts": (1) failing to report weekly after registering as homeless, contrary to RCW 9A.44.130(6)(b) and (2) providing a fake address, contrary to RCW 9A.44.130(2)(a)(ii). As a result, he contends that if there is insufficient evidence that he failed to report weekly, his right to a unanimous jury verdict was necessarily violated.

9

Criminal defendants in Washington have a right to a unanimous jury verdict. State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). "In certain situations, the right to a unanimous jury trial also includes the right to express jury unanimity on the means by which the defendant is found to have committed the crime." Id. Specifically, "[w]hen the evidence indicates that several distinct criminal acts have been committed, but [the] defendant is charged with only one count of criminal conduct, jury unanimity must be protected." State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 405-06, 756 P.2d 105 (1988) (Kitchen was abrogated in part on other grounds by In re Pers. Restraint of Stockwell, 179 Wn.2d 588, 316 P.3d 1007 (2014)). When the State presents evidence of several acts that could form the basis of the count charged, either the State must tell the jury which act to rely on, or the court must instruct the jury to agree on a particular criminal act. State v. Stockmyer, 83 Wn. App. 77, 86, 920 P.2d 1201 (1996). However, "[i]f the evidence is sufficient to support each of the alternative means submitted to the jury, a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary to affirm a conviction." Ortega-Martinez, 124 Wn.2d at 707-08.

The trial court denied McClinton's request for a unanimity instruction. The State argues that this was proper under State v. Peterson, 168 Wn.2d 763, 230 P.3d 588 (2010). There, the Washington Supreme Court held that failure to register as a sex offender is not an alternative means crime. Peterson, 168 Wn.2d at 771. Quoting State v. Mason, 170 Wn. App. 375, 381, 285 P.3d 154 (2012),

McClinton counters that this court cautioned that applying the Peterson court's reasoning "'to other factual circumstances leads to results contrary to the statutory language.'"

But, even assuming that failure to register is an alternative means crime in this case, the evidence is sufficient to support each alternative means submitted to the jury. As established above, the King County Sheriff's Office was not required to specify only one particular day of the week for McClinton to report. It was enough for the State to prove that the King County Sheriff's Office communicated to McClinton the requirement that he report once a week on a day of his choosing. And, McClinton does not argue that the State failed to prove the second means of failure to register submitted to the jury—providing a fake address. Indeed, Luchau testified that when he went to look for the address McClinton provided on his April 30 registration form, he was unable to find it.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that McClinton provided a fake address. Accordingly, McClinton was not deprived of his right to a unanimous jury verdict.

III. Supervision Fees

McClinton argues last that the trial court improperly ordered him to pay supervision fees as a condition of community custody. He relies in part on State v. Dillon, 12 Wn. App. 2d 133, 456 P.3d 1199 (2020).

As an initial matter, the State argues that we should decline to review this claim of error because McClinton raises it for the first time on appeal. We will

consider some sentencing errors raised for the first time on appeal, including some claims challenging conditions of community custody. State v. Casimiro, 8 Wn. App. 2d 245, 249, 438 P.3d 137 (2019), review denied, 193 Wn.2d 1029, 445 P.3d 561 (2019). This is because if such errors were permitted to stand, they would "create inconsistent sentences for the same crime" and "some defendants would receive unjust punishment simply because his or her attorney failed to object." State v. Blazina, 182 Wn.2d 827, 834, 344 P.3d 680 (2015). But, allowing challenges to discretionary legal financial obligations (LFOs) would not promote sentencing uniformity in the same way. Id. Thus, LFO errors do not command review as a matter of right. Id. at 833.

Here, however, McClinton's failure to object to the supervision fees is understandable in light of the surrounding circumstances. At sentencing, the trial court stated that there was "one mandatory financial obligation" it was required to impose, the $500 crime victim penalty assessment. The court made no mention of supervision fees. The supervision fees were not listed in the section of the judgment and sentence addressing LFOs. Instead, they were listed as one of nine community custody conditions in an appendix to the judgment and sentence. And, McClinton was indigent. As a result, we reach the merits of his argument.

We recently noted in Dillon that because supervision fees are waivable by the trial court, they are discretionary LFOs. 12 Wn. App. 2d at 152. In Dillon, an indigent defendant also argued that the trial court improperly imposed supervision fees as a condition of community custody. Id. At sentencing, the trial court similarly stated that it would "'simply order $500 victim penalty assessment, which

is still truly mandatory, as well as restitution, if any.'" Id. It did not mention supervision fees. Id. And, like the judgment and sentence here, the requirement that Dillon pay supervision fees was "buried in a lengthy paragraph on community custody." Id. Because it appeared that the trial court intended to waive all discretionary LFOs but inadvertently imposed supervision fees due to its location in the judgment and sentence, we remanded to the trial court to strike the fees. Id. at 152-53. We are presented with a substantially similar situation here. Accordingly, we find that remand is appropriate to strike the imposition of the supervision fees.

We affirm McClinton's conviction, but remand to the trial court to strike the supervision fees from his judgment and sentence.

_Appelwick, J._

WE CONCUR: